UNITED STATES of America,
Plaintiff-Appellee,

v.

Walter Lewis CLARK, III, and George
R. Newton, Moody Nichols,
Defendants-Appellants.

No. 82–7358.

United States Court of Appeals,
Eleventh Circuit.

May 29, 1984.
Rehearing and Rehearing En Banc
Denied July 30, 1984.

Ray Sandstrom, Fort Lauderdale, Fla., for Clark.

J. Stephen Salter, Birmingham, Ala., for Newton.

Albert C. Bowen, Jr., Birmingham, Ala., for Nichols.

Dayle E. Powell, Asst. U.S. Atty., Birmingham, Ala., for plaintiff-appellee.

Before GODBOLD, Chief Judge, RONEY and SMITH [*], Circuit Judges.

RONEY, Circuit Judge:

Moody Nichols, George Newton, and Walter Clark were convicted under a multi-count indictment charging among other things conspiracy to distribute and possess with intent to distribute methaqualone, 21 U.S.C.A. §§ 841(a)(1) and 846, and distribution and possession with intent to distribute diazepam, 21 U.S.C.A. § 841(a)(1) [1]. Numerous issues are raised on appeal: a fatal variance between the indictment and the proof; sufficiency of the evidence; improper joinder; a prejudicial change in the jury instructions after closing argument; and several evidentiary points. We affirm.

Briefly, the facts involve an agreement by Moody Nichols to sell 20,000 to 25,000 methaqualone tablets (quaaludes) to an FBI informant. As part of the arrangement, Nichols promised to transport the quaaludes from South Florida to Birmingham, Alabama. On the day the deal was to be consummated, Nichols was arrested. He had in his possession 20,000 white tablets dye-stamped "Lemmon 714," a marketing label of quaaludes. Chemical analysis later showed the pills actually contained the controlled substance diazepam not methaqualone. Two other defendants, George Newton and Walter Clark, who had been observed in Nichols' company at various times earlier in the day were also arrested. A search of Newton's truck produced 4,000 diazepam tablets identical to the ones seized from Nichols and two firearms.

*Sufficiency of the Evidence and Variance*

There are two aspects of the sufficiency of evidence issue as to the conspiracy charges: first, whether there was sufficient evidence to show that Newton and Clark were part of a conspiracy with Nichols at all, and second, whether the Government proved a conspiracy to distribute *diazepam* rather than a conspiracy to possess and distribute *methaqualone* which was charged in the indictment. The last issue also surfaces in an assertion that there was a fatal variance between indictment and proof.

■ As to the first aspect, the following evidence upholds a jury verdict that there was a conspiracy and that Newton was a knowing member of it. Telephone records introduced at trial showed numerous calls between Nichols's home or business and

---

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. Additionally, all defendants were charged and convicted of two counts of travel in interstate commerce to facilitate a conspiracy. 18 U.S.C.A. § 1952(a)(3). Moody Nichols was charged and convicted with seven counts of using of a telephone in facilitating a conspiracy. 21 U.S.C.A. § 843(b). Newton and Clark were charged with carrying a firearm during the commission of a felony. 18 U.S.C.A. § 924(c)(2). Only Newton was convicted of this charge. The trial court entered an order of acquittal as to Clark.

Newton's home or place of employment. Many of these calls immediately preceded or followed telephone conversations between Nichols and the FBI informant. Newton met with Nichols twice on the day the deal was to be consummated. During one of these meetings, a FBI agent overheard remarks to the effect that "it would be a one-on-one meeting" and "that there would be no problem with the money." Shortly after the second meeting, Newton was observed closing the lid on a garbage bin from which Nichols removed a crate containing 20,000 tablets of diazepam. Finally, Newton's truck was found to contain 4,000 tablets of diazepam of the same dosage as the diazepam seized from Nichols.

■ The following evidence was sufficient to prove Clark's complicity in the conspiracy. There were three phone calls between Nichols's business and Clark's residence. Clark rode from Florida to Alabama in a truck which the jury could reasonably infer was transporting the diazepam. He checked himself and Newton into a hotel room in Birmingham. FBI agents observed him meeting with Newton and Nichols twice on the day in question. He was present at the meeting at which Nichols said something about a "one-on-one meeting" and that "the money would be there". Finally, thirty loose diazepam tablets and two loaded handguns, one of them under the passenger's seat, were found in Newton's truck.

This evidence shows more than Clark's mere association with persons involved in criminal activity.[2] Clark's reliance on "mere presence" cases is misplaced.[3] The evidence linking Clark to the Nichols/Newton conspiracy is more substantial than the evidence in such cases in two ways. First, Clark was observed in a conversation with Newton and Nichols which appeared to concern the impending deal. Second, Clark's knowledge of the existence of the diazepam was made more probable by the evidence of loose tablets scattered throughout the truck. When this evidence is combined with the phone calls and the loaded weapon found under the passenger seat it creates a reasonable inference that Clark had a "deliberate, knowing, specific intent to join the conspiracy".[4]

■ In a conspiracy, proof is sufficient if it shows an unlawful agreement, knowledge by the defendants of the agreement, and their voluntary cooperation in the illegal venture.[5] The agreement need not be proved by direct evidence, but may be shown "by evidence of the attendant circumstances and the concerted acts and conduct of the alleged conspirators and the inferences reasonably deductible therefrom...."[6] The law does not require that each defendant have knowledge of all the details of the conspiracy, or knowledge of the participation of others.[7] The Government must only prove that the defendant knew the general nature and scope of the conspiracy.[8] A defendant may be found guilty of conspiracy even if he did not join

**2.** *United States v. Pintado,* 715 F.2d 1501, 1504 (11th Cir.1983); *United States v. Littrell,* 574 F.2d 828, 833 (5th Cir.1978).

**3.** *E.g., United States v. DeSimone,* 660 F.2d 532 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1732, 72 L.Ed.2d 149 (1982); *United States v. Cooper,* 567 F.2d 252 (3rd Cir. 1977); *United States v. Oliva,* 497 F.2d 130 (5th Cir.1974).

**4.** *DeSimone,* 660 F.2d at 537 (quoting *United States v. Morado,* 454 F.2d 167, 175 (5th Cir.), *cert. denied,* 406 U.S. 917, 92 S.Ct. 1767, 32 L.Ed.2d 116 (1972)).

**5.** *United States v. Vera,* 701 F.2d 1349, 1357 (11th Cir.1983); *United States v. Muller,* 550 F.2d 1375, 1380 (5th Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977).

**6.** *United States v. Jacobs,* 451 F.2d 530, 535 (5th Cir.), *cert. denied,* 405 U.S. 955, 92 S.Ct. 1170, 31 L.Ed.2d 231 (1971).

**7.** *United States v. Gianni,* 678 F.2d 956, 959 (11th Cir.), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982).

**8.** *United States v. Russo,* 717 F.2d 545, 549 (11th Cir.1983).

it until after its inception,[9] and even if he played only a minor role in the total scheme.[10]

The more difficult point is whether the evidence was sufficient to show a conspiracy to distribute methaqualone as opposed to a conspiracy to distribute diazepam. Defendants were charged with conspiracy to distribute methaqualone but only diazepam was introduced at trial. Defendants contend there was a fatal variance between the proof and the indictment.

In a remarkably similar case, this Court held that no variance was shown by the admission of diazepam in the form of "fake quaaludes" in a methaqualone conspiracy prosecution. *United States v. Ramos*, 666 F.2d 469 (11th Cir.1982). Defendants attempt to distinguish *Ramos* on the ground that all the *Ramos* defendants discussed the impending quaalude sale with undercover agents while only Nichols did in the instant case. With sufficient evidence to show that Newton and Clark entered an unlawful agreement with Nichols, however, Nichols's statements are sufficient to confirm the specific intent of the conspirators, and they could all be charged with his discussions with the FBI informant. *See generally United States v. James*, 590 F.2d 575, 581 (5th Cir.), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979).

There is no doubt that the jury convicted the defendants of the offense charged. The judge painstakingly emphasized in his instructions that the conspiracy charged was a conspiracy to possess with intent to distribute methaqualone. The Government explained in detail in closing argument why the defendants had been charged with a conspiracy concerning methaqualone even though the substance actually seized was diazepam. Finally, both Nichols's and Newton's attorneys argued to the jury that

it was a diazepam conspiracy and therefore their clients should be acquitted. The jury was clearly apprised that they had to find a methaqualone conspiracy to convict. *See United States v. Gonzalez*, 661 F.2d 488, 492 (5th Cir. Unit B 1981); *United States v. Figueroa*, 666 F.2d 1375, 1380 n. 4 (11th Cir.1982).

■ Apart from the conspiracy, Newton and Clark dispute the sufficiency of the evidence to convict them of possession of diazepam. Possession can be either actual or constructive. Constructive possession of contraband may be shown by proof of dominion and control over a vehicle containing contraband. *United States v. Brunty*, 701 F.2d 1375, 1382 (11th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983); *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir.1983).

■ As to Newton, possession is not even a close question. The diazepam in question was found in Newton's truck. Newton had been observed throughout the day of the seizure driving the truck around Birmingham and was attempting to enter the truck when it was impounded. Immediately upon his arrest, he admitted that everything in the truck was his. The search revealed diazepam tablets scattered throughout the truck as well as in a zippered bag under the driver's seat.

■ In turn, Newton's possession could be imputed to his coconspirator, Clark. A coconspirator can be charged as a principal in a substantive crime contemplated as the object of the conspiracy even when the crime is actually committed by other members of the conspiracy. *United States v. Blasco*, 702 F.2d 1315, 1331 (11th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 275, 78 L.Ed.2d 256 (1983); *United States v. Garcia*, 655 F.2d 59, 62 (5th Cir. Unit B 1981).

---

**9.** *United States v. Robertson*, 659 F.2d 652, 656 (5th Cir.1981).

**10.** *United States v. Alvarez*, 625 F.2d 1196, 1198 (5th Cir.1980) (en banc), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981).

### Jury Instructions

Newton argues that a difference between jury instructions given after closing argument and those expected to be given prejudiced his rights. Rule 30, Fed.R. Crim.P., requires the trial court to inform counsel of its proposed action upon requests for instructions prior to closing argument. The purpose of this rule is to enable counsel to intelligently argue the case to the jury.[11] This Court has only required substantial compliance with Rule 30 [12] and a defendant must show prejudice before his conviction will be reversed.[13]

The instruction at issue in this case concerns the conspiracy count. Nichols requested the following instruction:

I charge you, members of the jury, that Count One of the indictment charges all three defendants with conspiracy to distribute and possess with intent to distribute the substance methaqualone. Before you can convict any defendant under this count, you must be satisfied from the evidence beyond a reasonable doubt that such a conspiracy existed as I have defined that term to you and that the conspiracy was to either distribute or possess with intent to distribute the substance methaqualone.

If you find from the evidence, beyond a reasonable doubt, that a conspiracy did exist, but it was to distribute or possess with an intent to distribute the substance diazepam and not methaqualone, then you cannot convict any defendant under Count One of the indictment.

At the jury charge conference, the judge indicated to Nichols's attorney that he would give his requested instruction on conspiracy. The attorneys for Nichols and Newton argued the substance of the sec-

ond paragraph to the jury. This argument is representative:

Before you can convict any Defendant under [the conspiracy] count, you must be satisfied from the evidence beyond a reasonable doubt that such a conspiracy existed, and that the conspiracy was to distribute Methaqualone, not Diazepam. If the Government, and I submit to you that the Government's proof in this case has proved Diazepam. You heard the expert, I asked him. Did you find any Methaqualone in those pills? No, sir. All of them were Diazepam? Yes, sir. No Methaqualone in this case.

Now, [the government attorney] would have you believe that because she thinks or because some agent thinks they look like Methaqualone, that they ought to be convicted of this count. But, they look like Diazepam, too. There is absolutely no evidence of any conspiracy to distribute Methaqualone.

The judge's actual charge contained the first paragraph of the requested instruction verbatim. Instead of the second paragraph of the requested instruction, however, the judge instructed the jury that:

I further charge you that if you find beyond a reasonable doubt that there was a conspiracy, as I will define it for you, to possess Methaqualone with the intent to distribute it, it would not be necessary that the drugs actually possessed, if any, by any Defendant, actually be Methaqualone.

Characterizing this as a "drastic change", Newton argues that his counsel was deprived of the opportunity to intelligently argue his case.

Reversal has been granted in cases involving a Rule 30 violation when the change in the instructions is substantial,[14] when the judge's instructions repudiate

---

**11.** *United States v. Davis,* 583 F.2d 190, 195 n. 4 (5th Cir.1978).

**12.** *United States v. Mendoza,* 473 F.2d 697, 701 (5th Cir.1973).

**13.** *United States v. Jones,* 642 F.2d 909, 915 (5th Cir.1981); *United States v. Scheffer,* 463 F.2d 567, 574 (5th Cir.), *cert. denied,* 409 U.S. 984, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972).

**14.** *United States v. Mendoza,* 473 F.2d 697, 701 (5th Cir.1973) (although judge told attorney that

counsel's argument,[15] or when the judge's instructions impair the effectiveness of the attorney's argument.[16]

This case presents neither of the first two instances. The alteration of the one paragraph here cannot be considered a substantial change. Nor can it be claimed that the judge's actual instruction repudiated counsel's argument on the requested instruction. The argument that if the jury found there was a conspiracy to possess with intent to distribute diazepam they should acquit on the conspiracy count is not inconsistent with the instruction that the Government need not produce methaqualone to show a conspiracy to possess with the intent to distribute methaqualone.

▪ If this case falls in any of the three categories, it would be the last, interference with effective argument. Defense counsel, however, were not restricted in their arguments by the court, and although they were slightly misled, the judge's charge adequately presented defense counsel's theory.[17] The judge charged the jury that they had to find a conspiracy to possess with the intent to distribute methaqualone to convict on the conspiracy count. He added that it was not necessary that any methaqualone be possessed for such a conspiracy to exist. Nonetheless, no less than six times did the judge mention that the conspiracy had to be about methaqualone. The defense theory that the conspiracy was about diazepam was adequately

presented by negative implication. *United States v. Clay,* 495 F.2d 700, 708 (7th Cir.), *cert. denied,* 419 U.S. 937, 95 S.Ct. 207, 42 L.Ed.2d 164 (1974); *see United States v. Lyles,* 593 F.2d 182, 189 (2d Cir.), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979).

### *Joinder of Newton With Other Defendants*

▪ Newton claims he was prejudiced by his joinder for trial with Nichols and Clark. The decision on severance under Fed.R.Crim.P. 14 is committed to the discretion of the trial judge which should be overturned only on a showing of compelling prejudice. *United States v. Varella,* 692 F.2d 1352, 1360 (11th Cir.1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 127, 78 L.Ed.2d 124 (1983).

▪ Newton has demonstrated no compelling prejudice. He asserts that the overwhelming nature of the evidence against Nichols, the disclosure at trial of Nichols's prior arrest, and the filthy language on tape recordings of Nichols's conversations with the FBI informant had a spill-over effect on the jury's evaluation of the evidence against him. That stronger evidence existed against Nichols, however, does not meet the grounds necessary for severance.[18] The trial court carefully instructed the jury to consider the evidence against each defendant separately.[19] Newton's contention about the testimony on Nich-

---

he had included all of attorney's requested instructions except the last four or five he actually omitted eighteen).

**15.** *United States v. Harvill,* 501 F.2d 295, 297 (9th Cir.1974) (judge told attorney he would give instruction on specific intent, attorney argued specific intent was necessary, but judge instructed jury specific intent need not have been proved); *see also United States v. Wander,* 601 F.2d 1251, 1261–63 (3rd Cir.1979).

**16.** *Wright v. United States,* 339 F.2d 578, 580 (9th Cir.1964) (closing argument based on a theory of the defense the court ignored or rejected). *See United States v. McCown,* 711 F.2d 1441, 1452 (9th Cir.1983).

**17.** *See United States v. Scheffer,* 463 F.2d 567, 574 (5th Cir.), *cert. denied,* 409 U.S. 984, 93 S.Ct. 324, 34 L.Ed.2d 248 (1972).

**18.** *United States v. Kopituk,* 690 F.2d 1289, 1320 n. 27 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983); *United States v. Morrow,* 537 F.2d 120, 137 (5th Cir. 1976), *cert. denied,* 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977).

**19.** *See United States v. Michel,* 588 F.2d 986, 1002–03 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979).

ols's previous arrest is just a recasting of the different amounts of evidence argument.[20] Finally, the prejudicial effect of the crude language on the tapes is questionable since Newton did not take part in any of those conversations.

*Evidentiary Rulings*

 Nichols's two contentions as to evidentiary rulings are meritless. First, although the disclosure on the witness stand by a FBI agent that Nichols had been previously arrested was error, it was harmless in light of the overwhelming evidence against Nichols. *See generally United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). The trial judge expressly found contrary to Nichols's claim that the disclosure was deliberate.

Second, the chain of custody established for the drugs seized from Nichols was sufficient to support their admissibility. The use of lock-seal bags by the FBI supported a finding of reasonable probability that the diazepam produced at trial was the substance seized from Nichols.[21] A minor break in the chain of custody, such as failure to produce the evidence custodian who received the lock-seal bags in the mail, goes to weight not admissibility. *United States v. Clark,* 664 F.2d 1174, 1176 (11th Cir.1981).

AFFIRMED.

---

**20.** *See United States v. Dalzotto,* 603 F.2d 642, 646 (7th Cir.), *cert. denied,* 444 U.S. 994, 100 S.Ct. 530, 62 L.Ed.2d 425 (1979).

**21.** *United States v. Williams,* 503 F.2d 50, 53 (6th Cir.1974); *see United States v. Hughes,* 658 F.2d 317, 320 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982); *United States v. Mullins,* 638 F.2d 1151, 1152 (8th Cir.1981).