PER CURIAM.
This Court’s opinion of December 21, 2007, is hereby withdrawn and the following opinion is substituted therefor.
The appellant, Laren Edward Laakko-nen,[1] was convicted of possession of a controlled substance, crack cocaine, a violation of § 13A-12-212, Ala.Code 1975, and was sentenced to four years’ imprisonment in the state penitentiary. The circuit court suspended the sentence and ordered Laak-konen to serve two years on probation.
The State’s evidence tended to show the following. On September 16, 2003, Investigator Chard Brooks, of the Madison County Sheriffs Department, was notified by an investigator in another county that a 17-year-old female was missing and might be at a house on Old Railroad Bed Road in Madison County. Brooks went to the location and recognized the house because, he said, the house was “under constant scrutiny by our narcotics division as a point of sale for crack cocaine.” (R. 75.) The owner gave Brooks permission to search the premises. Police searched the house and then proceeded to a mobile home that was parked behind the house. Brooks saw a small red pickup truck parked between the house and the mobile home. He testified: “I noticed that the passenger occupant of the vehicle had what appeared to be a glass pipe to her lips with a lit cigarette in front of that pipe.” (R. 77.) The female, later identified as Brenda Mullins, was sitting in the passenger’s side of the truck and Laakkonen was sitting in the driver’s seat. Brooks immediately recognized the pipe as the “type of apparatus used for smoking crack cocaine.” Brooks detained the two individuals.
Mike Bertus, a patrol supervisor with the Madison County Sheriffs Department, testified that he was called to the scene. He searched the truck and discovered a cigarette package in the glove compartment. A white substance, later determined to be crack cocaine, was in the package. Bertus testified that he questioned Laakkonen after reading him his Miranda[2] rights, that Laakkonen waived his rights, and that Laakkonen told him that he had purchased $100 worth of crack cocaine earlier that day with Mullins’s money.
Laakkonen testified in his own defense. He said that earlier on the day he was arrested he went to pick up Mullins to give her a ride. She told him that if he would drive her to a certain location she could get money that someone owed her so that she could pay Laakkonen the money that she owed him. Laakkonen testified that when Mullins opened the door to get into the truck she pulled out a pack of cigarettes and put them in the glove compartment. He said that he never admitted to police that he had purchased any illegal drugs.
*1263 The jury chose to believe the State’s version of the events and convicted Laak-konen of the unlawful possession of crack cocaine.
I.
In our opinion issued on December 21, 2007, this Court reversed Laakkonen’s conviction on the basis of an improper jury instruction. This Court granted the State’s application for rehearing to address two of the State’s assertions presented in its brief in support of the application. First, it contends that the issue that formed the basis of this Court’s reversal of Laakkonen’s conviction — that the circuit court improperly instructed the jury that Laakkonen’s prior conviction had been proven when, in fact, it had not — was not presented in Laakkonen’s original brief. Thus, the State was not put on notice that it was expected to defend against this claim on appeal, and, the State contends, this Court should not have considered this claim under the scope of review set out in 45B, Ala.R.App.P. Second, it asserts that the issue that was actually raised in Laak-konen’s original brief to this Court — the challenge to the State’s attempt to impeach Laakkonen with a prior conviction without providing proof of that conviction — was not preserved for appellate review and is not properly before this Court for consideration.
In response to the State’s arguments on rehearing we have reexamined Laakko-nen’s original brief, which was filed with this Court on June 15, 2007. Laakkonen’s original brief argues only two issues: (1) Whether the evidence was sufficient to convict him of unlawful possession of cocaine; and (2) Whether the State failed to prove his prior conviction after he stated on cross-examination that he could not recall the conviction.[3]
In the statement of the issues and summary-of-the-argument sections of his original brief, Laakkonen argued only that the State’s failure to impeach him properly by proving a prior conviction after Laakkonen denied the existence of a prior conviction was error. The heading of the argument section in Laakkonen’s brief related to this issue stated: “THIS COURT SHOULD REVERSE BECAUSE [THE] STATE FAILED TO PROPERLY PROVE THE EXISTENCE OF A PRIOR CONVICTION TO IMPEACH MR. LAAKKONEN AFTER HE DID NOT ADMIT TO THE CONVICTION.” (Laakkonen’s original brief, p. 14.) Laakkonen then argued that the State had failed to present proof of the prior conviction, cited law relating to that issue, and cited that portion of his cross-examination dealing with the prior conviction. Although near the end of Laakko-nen’s argument on this issue Laakkonen made a passing reference to the prosecutor’s closing argument and quoted the trial court’s jury instruction, and stated that he had objected to both at the trial level, nowhere in Laakkonen’s original brief to this Court did he actually argue that the prosecutor’s closing argument or the trial court’s jury instruction constituted reversible error. It appears that the references to the prosecutor’s closing argument and the court’s jury instructions were not intended to be separate issues but instead were intended to bolster Laakkonen’s argument that the State erred in attempting to impeach him without proof of his prior conviction. After reexamining Laakko-nen’s original brief we agree with the State that this claim was not presented to this Court in Laakkonen’s original brief, *1264 and this Court should not have addressed it in the December 21, 2007, opinion.[4]
Second, as we stated above the State next argues on rehearing that Laak-konen’s challenge to the prosecutor’s attempt to impeach him without proper proof of his prior conviction was not preserved for appellate review and should not be addressed by this Court.
The following occurred during the State’s cross-examination of Laakkonen:
“[Prosecutor]: Your date of birth, please, sir.
“[Laakkonen]: 1/7/64.
“[Prosecutor]: Uh-huh. (Affirmative.) And is-“ — ~-your Social Security number?
“[Laakkonen]: Yes, sir.
“[Prosecutor]: Could you, please, tell these folks what you were doing in the building on September 27 of 2001?
“[Laakkonen]: 2001 — I can’t remember it.
“[Prosecutor]: Weren’t you in court on that date?
“[Laakkonen]: I may have, but Pm not for sure.
“[Prosecutor]: Were you not convicted of giving false information to a police officer on that date in this building?
“[Laakkonen]: Not that I recall, I mean.
“[Prosecutor]: Well, how many times have you been arrested for that, sir?
“[Laakkonen]: Not that I recall, none.
“[Prosecutor]: Do you have any children with the same name as you?
“[Prosecutor]: No, sir.
“[Prosecutor]: Back in that time or in— have you ever lived at 2401 Huntsville Street, Huntsville, Alabama, 35811?
“[Laakkonen]: Yeah, about ten years ago.
“[Prosecutor]: But you don’t remember September 27, 2001?
“[Laakkonen]: No. Not that I can say.
“[Prosecutor]: I beg your pardon?
“[Laakkonen]: Not that I can remember.”
(R. 130-31.)
In Ex parte Peagler, 516 So.2d 1369 (Ala.1987), the Alabama Supreme Court held that when a defendant states on cross-examination that he cannot remember a prior conviction it is incumbent on the State to prove that conviction. The Supreme Court stated:
“In Gregath v. Bates, 359 So.2d 404 (AJa.Civ.App.1978), Holmes, J., writing for the court, specifically addressed the same question now pending before us:
“ ‘The defendant alleges as error the trial court’s refusal to admit testimony which attempted to impeach a witness. Specifically, the defendant was attempting to impeach the testimony of one of the plaintiffs by showing a conviction for a crime involving moral turpitude, ie., conspiracy to commit gambling.
“ ‘The record reveals the plaintiff responded to the defendant’s questions and those propounded by the court by stating he didn’t know if he had been convicted of that particular *1265 offense. Defendant attempted to produce a “rap sheet” which supposedly showed the charge the plaintiff was convicted of. The trial court ruled that this was not the best evidence of such a conviction. We agree.
“ ‘When a witness denies that he has been convicted of the crime, it becomes incumbent upon the impeaching party to prove the conviction. This can be done by introducing the original court record of the conviction or a certified or sworn copy. The prior conviction cannot be proven by the offering of oral testimony by the impeaching party. See Headley v. State, 51 Ala.App. 148, 283 So.2d 458 (1973).’
“We are of the opinion that Gregath, although it was a civil case, correctly states the law of this jurisdiction .... ”
516 So.2d at 1370-71. In Peagler, the defendant objected during the defendant’s cross-examination to the State’s failure to prove the prior conviction.
Laakkonen failed to object to the State’s attempt to impeach him while he was on the witness stand. In fact, no objection was made until Laakkonen objected during the State’s closing argument and asserted that the State had failed to offer proof of his prior conviction. In our December 21, 2007, opinion we stated that Laakkonen could not have been aware that the State would not attempt to properly prove his conviction and thus at the time of the question Laakkonen’s attorney had no basis for objecting. However, after further reflection and review of the record we now believe we were wrong.
It was obvious, long before closing arguments, that the State had failed to meet its burden of proving Laakkonen’s prior conviction after he stated on cross-examination that he did not recall the prior conviction. Generally speaking, an error during the evidentiary portion of a trial should be objected to as soon as the error becomes apparent. See Watson v. State, 439 So.2d 762, 769 (Ala.Crim.App.1983). Typically a witness is impeached with proof of a prior conviction when he or she is on the witness stand. Clearly it was apparent by the conclusion of Laakkonen’s testimony that the State had failed to prove the prior conviction for impeachment purposes. However, Laakkonen failed to object until closing arguments, after the State had rested its case and after all the evidence had been presented to the jury.
This Court in Desimer v. State, 535 So.2d 238 (Ala. Crim.App.1988), held that because no objection was made when the witness stated that he had no prior conviction we could not consider whether the prosecutor had erred in failing to rebut the witness’s negative answer. See also Cook v. State, 574 So.2d 905 (Ala.Crim.App. 1990).
Here, Laakkonen’s objection, which did not come until the State’s closing argument, was untimely. Thus, the issue that the State failed to prove Laakkonen’s prior conviction is not preserved for appellate review and this Court will not consider it. See Desimer, supra.
II.
Laakkonen next argues in his original brief that the evidence was insufficient for the jury to find that he had actual or constructive possession of the crack cocaine that was found in the glove compartment of his truck.
Because Laakkonen was not in actual possession of the cocaine the State had to prove that Laakkonen had constructive possession of the drugs. See Ex parte J.C., 882 So.2d 274 (Ala.2003). In Ex parte J.C. the Alabama Supreme Court stated:
*1266 “ ‘In order to establish constructive possession, the State must prove “(1) [a]ctual or potential physical control, (2) intention to exercise dominion and (8) external manifestations of intent and control.” ’
“Ex parte Fitkin, 781 So.2d 182, 188 (Ala.2000) (quoting Bright v. State, 673 So.2d 851, 852 (Ala.Crim.App.1995)).... ‘ “When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances.”’ Ex parte Tiller, 796 So.2d [310] at 312 [(Ala. 2001) ] (quoting Posey v. State, 736 So.2d 656, 658 (Ala.Crim.App.1997)).
“ ‘While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Generally, the circumstances that provide that connection include:
“ ‘ “(1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that illicit drugs will be found; (5) evidence that debris of the contraband was found on defendant’s person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.” ’
“Grubbs v. State, 462 So.2d 995, 997-98 (AIa.Crim.App.1984) (quoting Temple v. State, 366 So.2d 740, 743 (Ala.Crim.App. 1978)).”
882 So.2d at 277-78. “Constructive possession of contraband may be shown by proof of dominion and control over a vehicle containing contraband. United States v. Brunty, 701 F.2d 1375, 1382 (11th Cir.), cert, denied, 464 U.S. 848,104 S.Ct. 155, 78 L.Ed.2d 143 (1983); United States v. Vera, 701 F.2d 1349, 1357 (11th Cir.1983).” United States v. Clark, 732 F.2d 1536,1540 (11th Cir.1984). A controlled substance may be jointly possessed, and possession may be established by circumstantial as well as direct evidence. Knight v. State, 622 So.2d 426, 430 (Ala.Crim.App.1992). “Proximity to illegal drugs, presence on the property where they are located, or mere association with persons who do control the drugs may be sufficient to support a finding of possession when accompanied with testimony connecting the accused with the incriminating surrounding circumstances.” German v. State, 429 So.2d 1138,1142 (AIa.Crim.App.1982).
The evidence in this case showed that Laakkonen was driving the truck in which the crack cocaine was found. He and Mullins were the occupants of the truck, which was parked in close proximity to a house where crack cocaine was known to be sold. Laakkonen admitted to police that he and Mullins specifically went to the house for the purpose of purchasing crack cocaine and that he did in fact buy $100 worth of crack cocaine at the house from two different people — although he had claimed he purchased the drugs for other people. Mullins was seen openly lighting a crack pipe while sitting with Laakkonen in his truck. Based on the record before us, we hold that the State presented sufficient evidence from which a jury could reason *1267 ably find that Laakkonen was in constructive possession of the crack cocaine discovered in the glove compartment of his truck. Ex parte J.C., supra.
For the foregoing reasons, we grant the State’s application for rehearing and withdrawn our original opinion. Laakkonen’s conviction is due to be affirmed.
APPLICATION FOR REHEARING GRANTED; OPINION OF DECEMBER 21, 2007, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
BASCHAB, P.J., and McMILLAN, SHAW, and WISE, JJ„ concur. WELCH, J., dissents, with opinion.

. Laakkonen’s first name is spelled “Laren” and "Loren” in various portions of the record. However, the indictment lists his name as "Laren.”

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. We did not address the first issue — the sufficiency issue — in our December 21, 2007, opinion because we found reversible error related to the second issue.

. In fact, this issue was not raised until Laak-konen filed a supplemental brief on this issue at this Court’s direction. In March 2008, we issued an order withdrawing our December 21, 2007, opinion and directing the parties to brief the issue of the propriety of the circuit court's jury instruction on the use of a prior conviction and whether that issue had been preserved. We subsequently set aside that order. The effect of setting aside that order was to reinstate our December 21, 2007, opinion and to render the supplemental briefs that were filed in response to our March order a nullity. Accordingly, we have not considered the supplemental briefs.