BURKE, Judge.
Leonard Jerome Black, Jr., appeals his conviction for trafficking in cocaine, a violation of § 13A-12-2SK2), Ala.Code 1975, and his resulting sentence of 15 years in prison, which the trial court split, ordering him to serve 3 years in confinement with the balance suspended pending his good behavior for 5 years. The trial court also conditioned the suspension of the balance of the sentence on Black’s paying a $50,000 fine, $50 to the victims compensation fund, and court costs. We reverse the judgment of the trial court and render a judgment for Black.

Facts and Procedural History

At Black’s bench trial, Johnny Thornton, a narcotics and vice investigator with the Mobile County Sheriffs Department, testified that on November 16, 2007, he received information from a confidential informant about possible drug activity at a location on Youngs Lane, which is at or near a municipal park in Mobile. The possible drug activity involved a white Ford Taurus vehicle that was parked in the park. Thornton went to that location and saw the Taurus parked at the edge of the park and a white Toyota vehicle (“the Toyota”) parked nearby. Thornton also saw four black males and a black female standing around both vehicles. After backup assistance arrived, Thornton approached those individuals. Two of the males were standing at a distance. Black and the other male were walking toward the Toyota, and the female was standing beside the Toyota, which belonged to her. At that time, Thornton saw Black drop a clear plastic bag to the ground. Thornton recovered the bag and inspected its contents, which consisted of green plant-like material that he believed to be marijuana.[1]
A few minutes later, after additional backup assistance arrived, Thornton took Black and one of the other males into custody and placed them in the backseat of a patrol car. They were not handcuffed, and Black was allowed to keep his cellular telephone. A digital-recording device was also placed inside the patrol car.
After receiving consent from the female to search the Toyota, Thornton quickly searched that vehicle. When no contraband was found, the female was allowed to leave.
Shortly thereafter, a K-9 unit arrived to conduct a search outside the Taurus. The drug-sniffing dog alerted on the vehicle for the presence of illegal narcotics. After the dog alerted on the vehicle, Thornton asked Black if he owned the vehicle, and he replied that he did not. Thornton testified that, to his knowledge, at that time the vehicle had not been reported stolen. *1057 Thornton also testified that the officers never recovered any keys to the vehicle.
The Taurus was locked, and the officers used a “slim jim” to open it. Thornton then opened the glove box of the vehicle and discovered two plastic bags he believed contained crack cocaine and powder cocaine. Thornton also discovered a Mobile Police Department accident report in the glove box. The accident report, dated August 9, 2007, concerned the Taurus. The accident report was filed by Hope Epps, who was the registered owner of the Taurus. The report listed what purported to be Epps’s home telephone number. The officers dialed that number in an attempt to ascertain who had custody of the vehicle. The first time the officers dialed the number, a black male answered and hung up. The officers tried to call the number two more times; each time nobody answered. While the officers were attempting to call the number, they noticed Black using his cell phone in a manner that appeared to correspond with their attempts to call. The officers asked Black for his cell-phone number, and he gave the officers the number that was listed as Epps’s home telephone number on the accident report.
At trial, the State admitted into evidence the recording from the digital-recording device that was placed inside the back of the patrol car with Black and played it for the court.[2] The recording included a cellphone call made by Black. According to the trial court, “[t]here’s a recording and Mr. Black uses a cell phone and calls someone and makes comments, as best you can hear him, something to the effect of tell them that the car is stolen, tell them the car is stolen.” (R. 9 of the hearing on a motion for judgment of acquittal.)
This Court has listened to the recording. The recording includes a cell-phone conversation between Black and his mother. Other than Black’s mother stating “hello” at the beginning of the conversation, only Black’s statements during the conversation can be understood. The conversation contained the following statements:
“[Black’s mother]: Hello.
“[Black]: Did you talk to them?
“[Black’s mother]: (Inaudible).
“[Black]: Lord have mercy, man. Please. Momma, you going to have to get off work. I’m in the back of the police car.
“[Black’s mother]: (Inaudible).
“[Black]: She at school though.
“[Black’s mother]: (Inaudible).
“[Black]: The car dirty though, momma. Please keep on calling up there.
“[Black’s mother]: (Inaudible).
“[Black]: Momma, you fussing at me.
“[Black’s mother]: (Inaudible).
“[Black]: From school.
“[Black’s mother]: (Inaudible).
“[Black]: Man that....
“[Black’s mother]: (Inaudible).
“[Black]: Yes they is. They’ll tell it ... report the car stolen.”[3]
Also, about one minute after Black ends his conversation with his mother, Black can be heard answering the cell phone and hanging it up. Less than a minute after Black answers the cell phone and hangs it up, an officer can be heard asking Black for his cell-phone number. Black then gives the officer the same phone number that was on the accident report. An officer then immediately informs Black that the officers found cocaine in the vehicle and that they are going to charge him with *1058 trafficking in cocaine. The officer then asks Black for the keys to the vehicle. Black denies having the keys, and he denies having driven the vehicle.
Ernest Cody, a forensic scientist with the Alabama Department of Forensic Sciences, testified that he analyzed the contents of the two plastic bags Thornton found in the glove box of the Taurus. Cody determined that one bag contained 25.41 grams of cocaine hydrochloride and the other bag contained 9.31 grams of cocaine base. Concerning the bag that contained 9.31 grams of cocaine base, Cody testified that he scraped each of the 16 rocks that were in the bag and combined them for analysis.
After the close of the evidence, Black filed a motion for a judgment of acquittal. In that motion, Black argued that the State failed to prove beyond a reasonable doubt that he was in constructive possession of the cocaine. Black also alleged that the State failed to prove beyond a reasonable doubt that he possessed 28 grams or more of cocaine because Cody did not separately examine each of the 16 rocks that were in the bag that contained 9.31 grams of cocaine base. At the hearing on the motion for judgment of acquittal, the trial court stated:
“Well, I think overall it’s a very close question particularly with regard to the first element of constructive possession, which is actual or potential physical control, I think there was some evidence— there was sufficient evidence to attempt to exercise dominion by having it reported stolen and towed somewhere away from him I think probably is evidence of external manifestation of intent by the— by the same evidence of the phone call to mother.
“Well, I’ll deny your motion for judgment of acquittal based on all of the evidence that I’ve heard and I’ll adjudge [Black] to be guilty of trafficking in cocaine.”
(R. 20 of the hearing on the motion for judgment of acquittal.) After sentencing, Black appealed.

Discussion

Black alleges that the State presented insufficient evidence to convict him of trafficking in cocaine. To establish a prima facie case of trafficking in cocaine, the State must demonstrate that Black was “knowingly in actual or constructive possession of, 28 grams or more of cocaine or of any mixture containing cocaine.” § 13A-12-23K2), Ala.Code 1975. It is undisputed that Black was not in actual possession of the cocaine, and he alleges that the State failed to present sufficient evidence showing that he was knowingly in constructive possession of the cocaine.[4]
In Ex parte J.C., 882 So.2d 274 (Ala.2003), the Alabama Supreme Court stated the standard of review applicable to a claim that the evidence produced at trial was legally insufficient to support a conviction:
“ ‘ “In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution. Faircloth v. State, 471 So.2d 485 (Ala.Cr.App.1984), aff'd, 471 So.2d 493 (Ala.1985).” Powe v. State, 597 So.2d 721, 724 (Ala.1991). It is not the function of this Court to de *1059 cide whether the evidence is believable beyond a reasonable doubt, Pennington v. State, 421 So.2d 1361 (Ala.Cr.App.1982); rather, the function of this Court is to determine whether there is legal evidence from which a rational finder of fact could have, by fair inference, found the defendant guilty beyond a reasonable doubt. Davis v. State, 598 So.2d 1054 (Ala.Cr.App.1992). Thus, “[t]he role of appellate courts is not to say what the facts are. [Their role] is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.” Ex parte Bankston, 858 So.2d 1040, 1042 (Ala.1978) (emphasis original).’ ”
“Ex parte Tiller, 796 So.2d 310, 312 (Ala.2001)(quoting Ex parte Woodall, 730 So.2d 652, 658 (Ala.1998)).”
882 So.2d at 277.
Furthermore, concerning constructive possession, the Alabama Supreme Court stated:
“ ‘In order to establish constructive possession, the State must prove “(1) [a]ctual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control.” ’
“Ex parte Fitkin, 781 So.2d 182, 183 (Ala.2000) (quoting Bright v. State, 673 So.2d 851, 852 (Ala.Crim.App.1995)). ‘ “When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances.” ’ Ex parte Tiller, 796 So.2d at 312 (quoting Posey v. State, 736 So.2d 656, 658 (Ala.Crim.App.1997)).
“ “While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Generally, the circumstances that provide that connection include:
“ ‘ “(1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that illicit drugs will be found; (5) evidence that debris of the contraband was found on defendant’s person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence.” ’
“Grubbs v. State, 462 So.2d 995, 997-98 (Ala.Crim.App.1984) (quoting Temple v. State, 366 So.2d 740, 743 (Ala.Crim.App.1978)).”
882 So.2d at 277-78.
This Court has held:
“ ‘Constructive possession of contraband may be shown by proof of dominion and control over a vehicle containing contraband. United States v. Brunty, 701 F.2d 1375, 1382 (11th Cir.), cert. denied, 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1983); United States v. Vera, 701 F.2d 1349, 1357 (11th Cir.1983).’ United States v. Clark, 732 F.2d 1536, 1540 (11th Cir.1984). A controlled substance may be jointly possessed, and possession may be established by circumstantial as well as direct evidence. Knight v. State, *1060 622 So.2d 426, 430 (Ala.Crim.App.1992). ‘Proximity to illegal drugs, presence on the property where they are located, or mere association with persons who do control the drugs may be sufficient to support a finding of possession when accompanied with testimony connecting the accused with the incriminating surrounding circumstances.’ German v. State, 429 So.2d 1138, 1142 (Ala.Crim.App.1982).”
Laakkonen v. State, 21 So.3d 1261, 1266 (Ala.Crim.App.2008).
“[W]hile establishing the close proximity of a defendant to an illegal substance is relevant to show his knowledge of its presence, this alone is insufficient to prove the required knowledge necessary to support a finding of constructive possession. Smith v. State, 457 So.2d 997 (Ala.Cr.App.1984). Furthermore, a defendant’s mere presence in an automobile in which an illegal substance is found will not support his conviction for possession of that substance unless the state introduces other evidence in support of the defendant’s possession. Story v. State, 435 So.2d 1360 (Ala.Cr.App.1982), rev’d on other ground, 435 So.2d 1365 (Ala.1983). The kinds of other evidence or circumstances that could provide the additional support necessary to show possession are unlimited and will vary with each case. Temple v. State, 366 So.2d 740 (Ala.Cr.App.1978).”
Perry v. State, 534 So.2d 1126, 1128 (Ala.Crim.App.1988) (emphasis in original).
In the present case, Black’s cell-phone conversation with his mother does not constitute legally sufficient evidence that Black had control over the cocaine or that he had knowledge of the cocaine. Here, because the mother’s responses are not intelligible, interpretation of the conversation amounts to mere speculation and conjecture. Based on the cell-phone conversation, the trial court surmised that Black “attempt[ed] to exercise dominion by having [the Taurus] reported stolen and towed somewhere away from him.” However, the trial court was apparently mistaken as to the precise contents of the recording because Black never actually asked his mother to report the Taurus stolen. He stated only that “the car [is] dirty” and that “they’ll tell it ... report the car stolen.”
Also, Black never actually identified the car, and there is no evidence indicating why Black would ask his mother to report the Taurus stolen to distance himself from it when it belonged to Hope Epps. In any event, without more evidence than was presented in this case, one can only speculate as to the meaning of Black’s conversation with his mother.
The evidence was not legally sufficient to support a finding that Black constructively possessed the cocaine found in the glove box of the Taurus. The State did not present sufficient evidence showing that Black controlled the cocaine or that Black had knowledge that the cocaine was in the glove box. Although Black, along with several other people, was seen near the Taurus, he was never seen in the vehicle, nor did he own it. The Taurus was locked, and there was no evidence that Black had the keys. To support its case, the State relies heavily on Black’s cellphone conversation with his mother and the fact that his cell-phone number was on the three-month-old accident report found in the glove box. Although that evidence is relevant to show some connection between Black and the Taurus, that evidence does not show that Black was in exclusive possession of the vehicle; thus, we cannot infer that Black had knowledge of the cocaine based solely on dominion and control over the vehicle containing the cocaine. In fact, the accident report shows *1061 that Hope Epps also possessed the vehicle. Additionally, the accident report does not show anything concerning Black’s knowledge of the cocaine or his control over the cocaine. We determine that based on the facts in this case, a rational finder of fact could not, by fair inference, find beyond a reasonable doubt that Black had control over the cocaine or had knowledge of the cocaine. Therefore, the State failed to present legally sufficient evidence of essential elements required to establish constructive possession; thus, we conclude that the trial court erred when it denied Black’s motion for a judgment of acquittal.
Based on the foregoing, the judgment of the trial court is reversed and judgment is rendered for Black.
REVERSED AND JUDGMENT RENDERED.
WELCH, P.J., and KELLUM and JOINER, JJ„ concur. WINDOM, J., dissents, with opinion.

. It appears from the record that Thornton initially charged Black with possession of marijuana in the second degree, but the record is silent regarding whether that charge was ever pursued.

. No issue has been presented to this Court concerning the admissibility of the recording.

. The recording was admitted into evidence at trial as State's Exhibit 4.

. Black also alleges that the State failed to prove beyond a reasonable doubt that he possessed 28 grams or more of cocaine. However, we do not need to address that allegation because we fully dispose of this case based on the issue of constructive possession.