Rel: May 3, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# Alabama Court of Criminal Appeals

## OCTOBER TERM, 2023-2024

_____

## CR-2022-1131

_____

## Jennifer Ryan Harmon

### v.

### State of Alabama

### Appeal from Randolph Circuit Court
### (CC-17-97)

COLE, Judge.

Jennifer Ryan Harmon appeals her conviction for possession of a short-barreled shotgun, a violation of § 13A-11-63, Ala. Code 1975,[1] and

---

[1]Section 13A-11-63 provides that "[a] person who possesses, obtains, receives, sells, or uses a short-barreled rifle or short-barreled shotgun in violation of federal law is guilty of a Class C felony."

her resulting sentence of five years' imprisonment, which was suspended for her to serve five years' probation. On appeal, Harmon argues that the State failed to prove that she was in constructive possession of the short-barreled shotgun. We agree with Harmon. Thus, we reverse her conviction, render a judgment in her favor, and pretermit consideration of her other arguments.

<u>Facts and Procedural History</u>

On June 6, 2017, Lt. Nathaniel Morrow of the Randolph County Sheriff's Office was looking for Harmon's husband, Jason Harmon, because Jason had two active warrants for his arrest. Lt. Morrow testified that the Harmons drove "a grey Nissan Maxima," which he soon came across on "County Road 252, where it intersects with County Road 329." (R. 21.) "[T]he Maxima was just parked … in the middle of the road." (R. 21.) Harmon was alone in the Maxima, "laying in the passenger seat" with the seat "laid back." (R. 22-23.) Lt. Morrow asked Harmon to get out of the Maxima, and, when other officers showed up, he "asked for [her] consent to search the Maxima," which Harmon provided. (R. 22.) Somewhere in the backseat area, there was "a black, hard plastic" "tool case, maybe like a Dewalt drill case or a saw case" with

"a 16-gauge sawed-off shotgun" inside. (R. 22-23, 28.) Lt. Morrow testified that the case was closed and that it "had two or three latches on it." (R. 23, 30.) Lt. Morrow testified that, from the outside, the case did not look like it would have a gun in it. Lt. Morrow also acknowledged that the Maxima was a "little messy" and that other items were in the vehicle. (R. 30.) Lt. Morrow never saw Harmon holding the shotgun, nor was the shotgun dusted for fingerprints. No other contraband was found in the Maxima. Harmon was placed under arrest for possession of the short-barreled shotgun.

Randolph County Sheriff's Investigator Donnie Strain saw Jason "walking down the road with a gas can." (R. 35.) He was less than a mile from the Maxima and was walking away from the vehicle. Inv. Strain arrested Jason on his "active warrants." Inv. Strain then went to the grey Nissan Maxima, which he "recognized as belonging to Jason and Jennifer Harmon." (R. 35.) According to Inv. Strain, the Harmons "regularly occupied" the Maxima. However, Inv. Strain acknowledged that the Maxima was "not registered" in anyone's name and that it had "no tag on it." (R. 54.) Inv. Strain also testified that no shotgun shells were found on Harmon's person.

3

After the State rested, Harmon moved for a judgment of acquittal, arguing, among other things, that the State had not shown that she was in constructive possession of the short-barreled shotgun because it had not shown that she had knowledge of the presence of the shotgun. The trial court denied Harmon's motion.

In her defense, Harmon testified that, around 2:00 p.m. that day, Jason picked her up from her family's home in Heflin and that they were going to his mother's house in Woodland. (R. 73.) They ran out of gas, and Jason went to get gas while Harmon "laid back in the seat and was taking a nap." (R. 73-74.) Harmon testified that she was alone in the car for about 10 or 15 minutes before the officer knocked on her passenger window and asked if he could search the car. Harmon testified that the car belonged to Jason and that she had ridden in it only twice. Harmon further testified that Jason had been driving the car for about a month. Harmon acknowledged that some of her clothes were in the Maxima because Jason was bringing them to her. However, Harmon testified that she did not know that a short-barreled shotgun was in the hard black plastic case in the backseat of the car or even that Jason owned such a gun. Harmon also testified that she and Jason did not own anything

together and that, during their marriage, they "were back and forth," and that she lived "in Heflin a lot of the time." (R. 77-78.) Harmon and Jason "split up" after this incident.

The jury found Harmon guilty of possessing a short-barreled shotgun. On July 28, 2022, the trial court sentenced Harmon to five years' imprisonment but suspended the sentence. On August 24, 2022, Harmon moved for a new trial, arguing, among other things, that the State "presented no evidence of … constructive possession." (C. 35-36.) Harmon's motion was denied. This appeal follows.

Standard of Review

In reviewing a challenge to the sufficiency of the State's evidence, an appellate court

> "'"'must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.'" Ballenger v. State, 720 So. 2d 1033, 1034 (Ala. Crim. App. 1998), quoting Faircloth v. State, 471 So. 2d 485, 488 (Ala. Crim. App. 1984), aff'd, 471 So. 2d 493 (Ala. 1985). "'The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.'" Nunn v. State, 697 So. 2d 497, 498 (Ala. Crim. App. 1997) (quoting O'Neal v. State, 602 So. 2d 462, 464 (Ala. Crim. App. 1992)). "'When there is legal evidence from which the jury could, by fair inference, find the defendant

5

guilty, the trial court should submit [the case] to the jury, and, in such a case, this Court will not disturb the trial court's decision.'" Farrior v. State, 728 So. 2d 691, 696 (Ala. Crim. App. 1998) (quoting Ward v. State, 557 So. 2d 848, 850 (Ala. Crim. App. 1990)). "The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury." Ex parte Bankston, 358 So. 2d 1040, 1042 (Ala. 1978).'"

Chapman v. State, 196 So. 3d 322, 335 (Ala. Crim. App. 2015) (quoting

Gavin v. State, 891 So. 2d 907, 974 (Ala. Crim. App. 2003)). Likewise,

"'"[i]n reviewing a conviction based on circumstantial evidence, this Court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F. 2d 1039 (5th Cir. 1974); United States v. McGlamory, 441 F. 2d 130 (5th Cir. 1971); Clark v. United States, 293 F. 2d 445 (5th Cir. 1961)."'"

Chapman, 196 So. 3d at 336 (quoting Bradford v. State, 948 So. 2d 574, 578-79 (Ala. Crim. App. 2006), quoting in turn Cumbo v. State, 368 So. 2d 871, 874-75 (Ala. Crim. App. 1978)).

<u>Analysis</u>

Harmon argues that the State's evidence was insufficient to show that she was in constructive possession of the short-barreled shotgun because, she says, there was no evidence indicating that she had any knowledge of the shotgun or that she was in "exclusive possession, ownership, control, or dominion of the [Maxima] where the firearm was found." (Harmon's brief, p. 21.) We agree with Harmon.[2]

Because it is undisputed that Harmon was not in actual possession of the shotgun, the State was required to prove that she was in

---

[2]Although Harmon made a general "insufficiency of evidence" argument below, the State argues that only Harmon's "knowledge" argument was preserved because she also specifically challenged the State's failure to show her "knowledge" of the shotgun. The State is correct that "[s]pecific objections waive all others not specified," <u>Curry v. State</u>, 601 So. 2d 157, 159 (Ala. Crim. App. 1992), but "knowledge may be inferred from the accused's exclusive possession, ownership, and control of the premises." <u>Ex parte Tiller</u>, 796 So. 2d 310, 312 (Ala. 2001.) In short, "knowledge" is inextricably intertwined with Harmon's related argument that there was no evidence that she was in exclusive possession of the shotgun. Furthermore, Harmon argued in her written posttrial motion for a judgment of acquittal, which was denied by the trial court, that the "State presented no evidence of actual possession [and] no evidence of constructive possession." (C. 36.) Accordingly, we do not limit our review of Harmon's constructive-possession argument to mere "knowledge," as urged by the State. Rather, we consider whether the State's evidence proved her knowledge or exclusive control and, thus, her constructive possession of the shotgun.

constructive possession of the firearm. "'"In order to establish constructive possession, the State must prove '(1) [a]ctual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control.'"'" Black v. State, 74 So. 3d 1054 (Ala. Crim. App. 2011) (quoting Ex parte J.C., 882 So. 2d 274 (Ala. 2003), quoting Ex parte Fitkin, 781 So. 2d 182, 183 (Ala. 2000), quoting in turn Bright v. State, 673 So. 2d 851, 852 (Ala. Crim. App. 1995)). To prove constructive possession, "the State also had to show beyond a reasonable doubt that [Harmon] knew of the presence of the [short-barreled shotgun]." West v. State, 332 So. 3d 445, 450 (Ala. Crim. App. 2021) (citing Ex parte Tiller, 796 So. 2d 310, 312 (Ala. 2001), quoting Posey v. State, 736 So. 2d 656, 658 (Ala. Crim. App. 1997)). "When a defendant is not in exclusive possession of the place where drugs or contraband are found, '[k]nowledge may be proven by the "surrounding facts and circumstances."'" West, 332 So. 3d at 450 (quoting Moody v. State, 615 So. 2d 126, 127 (Ala. Crim. App. 1992), quoting in turn Franklin v. State, 437 So. 2d 609, 611 (Ala. Crim. App. 1983)). "'[K]nowledge of the presence of [contraband] may be inferred from the accused's possession, control, and ownership of the vehicle'" in which the contraband was

8

found.  Id. (quoting Temple v. State, 366 So. 2d 740, 742 (Ala. Crim. App. 1978)).  "Constructive possession of contraband may be shown by proof of dominion and control over a vehicle containing contraband."  Laakkonen v. State, 21 So. 3d 1261, 1266 (Ala. Crim. App. 2008) (internal citations omitted).

In addition, contraband "may be jointly possessed, and possession may be established by circumstantial as well as direct evidence."  Id. "'Proximity to [contraband], presence on the property where they are located, or mere association with persons who do control the [contraband] may be sufficient to support a finding of possession when accompanied with testimony connecting the accused with the incriminating surrounding circumstances.'"  Id. (quoting German v. State, 429 So. 2d 1138, 1142 (Ala. Crim. App. 1982)).  However, the "'mere presence of an accused in an automobile containing [contraband]' is insufficient."  West, 332 So. 3d at 450 (quoting Temple, 366 So. 2d at 742.).  Finally,

> "'[w]hile non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough.  Some evidence that connects a defendant with the contraband is required.  Generally, the circumstances that provide that connection include:
>
>> "'"(1) evidence that excludes all other possible possessors; (2) evidence of actual

possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that [contraband] will be found; (5) evidence that debris of the contraband was found on defendant's person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence."'"

Ex parte J.C., 882 So. 2d 274, 277-78 (Ala. 2003) (quoting Grubbs v. State, 462 So. 2d 995, 997-98 (Ala. Crim. App. 1984), quoting in turn, Temple v. State, 366 So. 2d 740, 743 (Ala. Crim. App. 1978)).

In Harmon's case, the State failed to present sufficient evidence from which a jury could reasonably find that Harmon was in constructive possession of the short-barreled shotgun. Harmon's "presence in the [Maxima] was, alone, insufficient evidence of h[er] constructive possession of the [shotgun]." West, 332 So. 2d at 451. Although law-enforcement officers testified that they believed the Maxima belonged to the Harmons, there was no evidence indicating that Harmon owned the Maxima or that the Maxima was registered in her name. There was also no evidence indicating that Harmon possessed keys to the Maxima.

10

Harmon testified that the Maxima belonged to Jason, and when Lt. Morrow approached the Maxima, Harmon was in the front passenger's seat, not the driver's seat. Meanwhile, Jason was going to get gas to put in the Maxima which he had been driving. There was, thus, insufficient evidence that Harmon had exclusive possession, ownership, or control over the Maxima. Furthermore, the evidence of Jason's control over the vehicle, in addition to Inv. Strain's testimony that he had "information" that Jason had a sawed-off shotgun, did not exclude other "possible possessors" of the firearm.

Although Harmon testified that clothes belonging to her were found in the Maxima, she explained that Jason was bringing those items to her because she was staying with her family. The State failed to present any evidence showing where Harmon's clothes were in relation to the closed toolbox containing the short-barreled shotgun and, thus, failed to show how the presence of a few items of clothing in the Maxima showed Harmon's knowledge of the presence of the contraband. Harmon also made no oral admission or indicated any consciousness of guilt. Rather, Harmon was cooperative with law enforcement and consented to a search of the Maxima. Finally, the short-barreled shotgun was not in plain view

but was hidden in what appeared to be a hard black plastic drill case. Moreover, the case was in the backseat of the Maxima and was closed and latched. Cf. Lewis v. State, 741 So. 2d 452, 455 (Ala. Crim. App. 1999) ("Evidence indicating that the pistol was in plain view and that it was easily accessible by Lewis, was sufficient to allow the jury to infer that Lewis had knowledge and was in constructive possession of the pistol at the time of his arrest.").

In sum, when viewed in the light most favorable to the State, there was insufficient evidence from which the jury could, "by fair inference," find Harmon guilty beyond a reasonable doubt of possession of a short-barreled shotgun based on the principle of constructive possession. See, e.g., Brooks v. State, 321 So. 3d 1283, 1288 (Ala. Crim. App. 2020) (holding that the State failed to prove constructive possession because "[t]here was no other evidence to connect Brooks to the [contraband] other than his presence in the vehicle and his close proximity" to the container in which the contraband was found); Black v. State, 74 So. 3d 1054, 1060-61 (Ala. Crim. App. 2011) (holding that, although Black's connection to the vehicle was shown, the evidence did not show his constructive possession of contraband because there was no evidence of

12

his exclusive possession of the vehicle or that he had knowledge of the contraband; "[t]he Taurus was locked, and there was no evidence that Black had the keys."); Radney v. State, 840 So. 2d 190, 195 (Ala. Crim. App. 2002) (holding that the evidence was not sufficient to support a finding of constructive possession when "[t]here was simply no evidence, other than Radney's ownership of and presence in the vehicle, showing that Radney had knowledge of the [contraband] in the leopard-print bag."); and R.W. v. State, 808 So. 2d 1228, 1233-34 (Ala. Crim. App. 2001) (holding the evidence insufficient to show constructive possession because "[t]he State presented no evidence tending to exclude other possible possessors, … no evidence that any contraband was found on the appellant's person, no evidence that the appellant had substantial control over the place where the contraband was found, no evidence of admission by the appellant, no evidence that the appellant had engaged in conduct that would suggest a consciousness of guilt … and no evidence suggesting that the appellant had ever used [the contraband].").

Conclusion

For these reasons, the trial court erred by denying Harmon's motion for a judgment of acquittal.  Accordingly, the judgment of the trial court is reversed, and a judgment is rendered in favor of Harmon.

REVERSED AND JUDGMENT RENDERED.

Windom, P.J., and Kellum, McCool, and Minor, JJ., concur.