KELLUM, Judge.
The appellant, Karla Gaye Chapman, was convicted of murder, a violation of § 13A-6-2, Ala.Code 1975. The circuit court sentenced Chapman to 35 years’ imprisonment and ordered her to pay a $10,000 fine, $500 to the crime victims compensation fund, and court costs.
The record indicates the following pertinent facts. In 2009, Jonathan Elliff and Chapman got married; they began having difficulties in the marriage shortly afterward. Tonya Kilmeyer testified that she was friends with Chapman and that she frequently spoke with her in the time leading up to Elliff s death. According to Kil-meyer, Chapman was angry at Elliff because Elliff sold Chapman’s vehicle for $800 and refused to give Chapman any of the money; Chapman was also angry because Elliff would only loan — not give— her $100 so that she could send it to her adult son' for his birthday.
On May 28, 2010, Kilmeyer and her fiancé, Tracy Warden, gathered at Chapman and Elliff s house, for a small party. Soon after Kilmeyer and Warden arrived, Elliff left to get pills. Elliff returned to the party and gave two Lortab pills to Warden, who then gave one to , Kilmeyer.
A few hours into the party, Chapman and Elliff began arguing over money from the sale of Elliff s vehicle and other financial matters. According to Kilmeyer, Elliff did not want to argue, but Chapman kept arguing. Elliff and Chapman argued throughout the house. Eventually, the argument escalated and Elliff stated that he was going to leave the home and leave Chapman. Elliff went into his bedroom and gathered some clothes to take with him. However, Elliff decided that he wanted to eat before he left so he placed a lasagna casserole in the oven. According to Kilmeyer, Chapman grabbed the lasagna out of the oven and threw it out the front door of the house. Afterward, Chapman grabbed a knife, told Elliff to leave, and then stabbed the knife into the kitchen countertop. At that point, Warden wanted to leave, ánd'Kilmeyer offered to let either Elliff or Chapman stay at her house because Kilmeyer believed the couple needed to be apart. Elliff grabbed his wallet and keys, then left the residence.
After Elliff left, Chapman began arguing with Kilmeyer over bills, money, and the fact that Kilmeyer “had a good man.” (R. *326 151.) Chapman escalated the argument by bringing up the fact that Kilmeyer had been arrested for involvement with methamphetamine. Chapman and Kilmeyer made peace for a short time before starting to argue again. At that point, Kilmeyer got into her car and left. After backing down the driveway, Kilmeyer turned around because she had left Warden at the house. When she returned, she told Chapman “[tjhat’s why Jonathan left, and that’s why I am leaving.” (R. 153.) Chapman then grabbed Kilmeyer’s shirt, ripping it. Kilmeyer hit Chapman and then drove away without Warden. Chapman brought Warden home approximately 30 minutes later.
Sometime after midnight, Elliff returned home. Although the details are disputed, Elliff was stabbed with a knife. Afterward, both Chapman and Elliff telephoned 911 for emergency assistance.
At around 1:30 or 2:00 a.m., Greg Free, a sergeant with the Madison County Sheriffs Office, arrived at the scene and saw Chapman standing outside and Elliff lying on the porch in a pool of blood. Sgt. Free and another officer went to Elliff immediately and began to treat Elliff s injuries. Sgt. Free testified that Elliff was in a lot of pain, that he had a large stab wound to his abdomen, and that he was bleeding profusely. There was a large pool of blood around Elliff, which soaked Sgt. Free’s pants when he knelt down. Elliff had difficulty breathing and said that it hurt to talk. Sgt. Free testified that Elliff was pale, in dire need of medical help, and near death. When Sgt. Free asked Elliff who had stabbed him, Elliff responded that his wife, Karla, had stabbed him when he was “[ljaying down on the couch.” (R. 179.)
Paramedics arrived shortly afterward and took over Elliff s medical care. Sgt. Free then walked inside the residence and observed a large pool of blood next to the sofa. The blood trail led throughout the house and crossed over itself several times. In the kitchen, Sgt. Free saw a butcher’s knife that had been “freshly washed” but that contained red beads of what appeared to be blood. (R. 181.) Sgt. Free contacted Investigator Roland Campos and ordered Chapman transported to the police station so that Investigator Campos could interview her.
Investigator Campos testified that around 3:30 a.m. he met Chapman at the police station and that she appeared to be upset and crying. Although Chapman smelled like “old alcohol,” she did not appear to be intoxicated. Chapman was advised of her Miranda[1] rights and subsequently gave a statement to Campos.
In her statement, Chapman told Investigator Campos about her monetary disputes with Elliff, the party that evening, and her fight with Elliff at the party. Chapman stated that after everyone had left the house, she changed clothes and went to sleep on the couch. According to Chapman, the next thing she remembered was Elliff standing over her and accusing her of having another man in the house. Chapman said that Elliff then began searching the house and that the next thing she knew, Elliff was walking toward the front door, groaning, and holding his stomach. When Chapman went over to see Elliff, she saw blood everywhere. Chapman said that both she and Elliff telephoned 911 afterwards.
When asked how Elliff got stabbed, Chapman said that she did not know but suggested that he did it to himself. At one point during the questioning, Chapman told investigators that Elliff had punched her and gave her a fat lip. Investigators *327 then photographed Chapman’s face in addition to a scratch on her'chest, a scratch on her neck; and a sharp cut on her right hand.
After Elliff died on the following morning, Investigator Campos interviewed Chapman for a second time. Chapman was advised of her Miranda rights for a second time and proceeded to give a second statement.
Dr. Emily Ward, a physician with a spe-ciality in forensic pathology, performed an autopsy on Elliff. Dr. Ward testified that the knife went at least three inches inside Elliff s abdominal wall and pierced his liver and a vena cava. Elliff suffered extreme blood loss from the injury and died as a result of the stab wound. Dr. Ward also testified that Elliff had a bruise on the left side of his face and a freshly busted lip.
Chapman testified in her own defense at trial. According to Chapman, on May 29, 2010, she got off work and picked up so.me beers on her way home. At home, she smoked some marijuana and drank beer while she waited on her husband' and friends to arrive for a small party. Chapman ádmitted that she and Elliff got into an argument that resulted in ‘Elliff s leaving, but she denied' ever pointing the knife at anyone or stabbirig it into the kitchen countertop. Chapman testified that, aftér she took Warden to his house that night, she returned home and went to sleep on the couch; Chapman said that when she woke up, Elliff was standing over 'her. Elliff accused Chapman of having another man in the house and proceeded to search the house. Chapman indicated that this is how Elliff would behave whenever he used crack/cocaine.[2]
According to Chapman, - she and Elliff then got into an argument, which resulted in his slamming her to the ground. . Chapman testified that Elliff then held a knife to her throat and said that he was going to kill her. Chapman said that she was able to push Elliff off her and make him drop the knife. Chapman then grabbed the knife and stabbed him in self-defense. Chapman stated that at first she did not realize that she had stabbed Elliff. . Chapman also testified that she did not remember seeing blood until Elliff sat down on the porch. Chapman said that she did not tell Investigator Campos or,anyone else this story because she might have been “in a state of shock” after the stabbing. (R. 380.)
After both sides rested and the circuit court instructed the jury on the applicable principles of law, the jury found Chapman guilty of murder. This appeal followed.
I.
Chapman contends that the circuit court erred when it allowed five police officers to testify that Elliff had made several domestic-violence complaints to police during the 12 months preceding his death. Specifically,' Chapman contends that the evidénce concerning the incidents of domestic violence was inadmissible because, she says, it was hearsay and was prohibited under Rule 404(b), Ala; R. Evid., for the following reasons: (1) the evidence was not plain, clear, and conclusive; (2) the evidence was not admissible to show intent; (3) the evidence was not admissible to show motive; (4) the evidence was not admissible under the “initial aggressor exception”; (5) the evidence was offered for the improper purpose of showing Chapman’s bad character and her propensity to commit murder; and *328 (6) the probative value of the bad acts was substantially outweighed by the unfair prejudice of their , admission.
The record'indicates that before trial the State gave Chapman notice that it planned to introduce Rule 404(b) evidence that she' had threatened to- stab a previous boyfriend and that she had stabbed the kitchen countertop when she made the threat; that she had previously been arrested for domestic -Violence 'involving Elliff on May 25, 2009; that, in the year leading up to Elliffs death, police- officers had received five separate telephone calls from Elliff in which he reported .Chapman for domestic violence; and that Chapman had previously cut an ex-husband’s throat in a domestic-violence assault.[3]
On. the day the trial began,. Chapman objected to the introduction of the police officers’ testimony regarding domestic violence between Elliff and Chapman. Chapman objected on the grounds that the telephone calls were “straight character evidence” and hearsay in violation of Rule 404(b). The circuit court indicated.that it would- most likely. limit the testimony; however,,the circuit court overruled Chapman’s objection to the testimony “at [that] time,” and stated that it would revisit the issue when- the evidence was presented at trial. (R. 14.)
During trial, Chapman objected to the introduction of the evidence on the following grounds: it was hearsay; it was not relevant; its probative value was outweighed by ■ the prejudicial effect; the State had not gone into any permissible purpose under Rule 404(b);. and the 'witnesses at trial did not actually observe or hear the events that they were going to testify about. The circuit court overruled Chapman’s - objection, but stated that- it would still limit the testimony. When the jury reentered the room, the circuit court advised the jury that' the State -was’ about to offer the testimony of several Madison County sheriffs deputies regarding reports of domestic abuse between Chapman and Elliff. The circuit court instructed the jury to consider the witnesses’ testimony for the sole purpose of determining Chapman’s “motive and/or intent” on the day of Elliffs death. (R. 257.) The circuit court also instructed the jury that it could not use this testimony to prove that Chapman acted, in conformity with those incidents.
Amy Abercrombie testified that on May 25, 2009, she was working as a deputy with the Madison County Sheriffs Office when she received a • dispatch call from Elliff regarding a domestic-violence situation. Abercrombie testified that she traveled to Elliffs residence, where she encountered Elliff and Chapman. Elliff was calm and cooperative while Chapman was angry and yelling. Chapman was arrested that night for domestic violence/harassment in the third degree.
Patrick Gregory, a deputy sheriff with the Madison County Sheriffs Department, testified that on August 9, 2009, he received a domestic-dispute complaint from Elliff. Gregory traveled to Elliffs residence and found both Elliff and Chapman to be calm. Neither Elliff-nor Chapman was arrested on that day.
- Thomas Simmons, a deputy with the Madison County Sheriffs Department, testified that on October 31, 2009, he received a. domestic complaint from Elliff. Simmons testified .that he drove to Elliffs residence and encountered Elliff and Chapman. According to Simmons, Chapman was angry because Elliff had been out *329 all night. Chapman was not arrested on that .day.
Kenneth Hooper, a deputy with the Madison County Sheriffs Department; testified that he was working on November 23, 2009, when he received a domestic-violence report from Elliff. Hooper responded to the scene and encountered El-liff and Chapman. Hooper testified that Elliff was agitated and that Chapman was both" intoxicated and agitated. Neither Chapman nor Elliff was arrested that night;'
Jake Church, a deputy sheriff with the Madison County Sheriffs Department, testified that he was working on January 24, 2010, when he received a domestic complaint from Elliff. Church testified that he encountered Chapman at the residence but that he did not recall her demeanor. Chapman was not arrested that night.
The Alabama Supreme Court has long held:
‘“Review on appeal is restricted to questions and issues properly and timely raised at trial.’ Newsome v. State, 570 So.2d 703, 717 (Ala.Crim.App.1989). ‘An issue raised for the first time on appeal is not subject , to appellate review because it has not been properly preserved and presented.’ Pate v. State, 601 So.2d 210, 213 (Ala.Crim.App.1992). ‘ “[T]o preserve an issue for appellate review, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof.” ’ McKinney v. State, 654 So.2d 95, 99 (Ala.Crim.App.1995) (citation omitted). ‘The statement of specific grounds of objection waives all grounds not specified, and the trial court will not be put in error on grounds not assigned at trial.’ Ex parte Frith, 526 So.2d 880, 882 (Ala.1987). ‘The purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of .the alleged error, giving an opportunity to correct it before the case ,is submitted to the jury,’ Ex parte Works, 640 So.2d 1056, 1058 (Ala.1994).”
Ex parte Coulliette, 857 So.2d 793, 794-95 (Ala.2003). Furthermore, the appellant is bound by the specific objections made at trial and cannot raise new grounds on appeal. Davis v. State, 42 So.3d 162 (Ala.Crim.App.2009).
With regard to this specific testimony, the only objections Chapman made at trial and raised on appeal are that the deputies’ testimony regarding domestic violence between Elliff and her was hearsay, that the. .evidence did not meet any of the permissible purposes of Rule 404(b), and that the probative value, of the testimony was substantially outweighed by unfair prejudice. Thus, the arguments that -the evidence was. not plain, clear, and conclusive and that the evidence was not admissible under the initial-aggressor exception are not preserved for review on appeal.
A.
“Hearsay is not admissible except as provided by these rules, or.by other rules adopted by the.,Supreme Court, of Alabama or by statute.” Rule 802, Ala. R. Evid. “Hearsay” is defined as “a, statement, other than one made by the declar-ant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Rule 801(c), Ala. R. Evid. However, “‘[a] statement may be admissible where it is not offered to prove the truth of whatever facts might be stated,, “but-.rather, to establish the reason for action or conduct by the witness.” ’ ” Sawyer v. State, 598 So.2d 1035, 1038 (Ala.Crim.App.1992) (quoting Edwards v. State, 502 So.2d 846, 849 (Ala.Crim.App.1986), quoting in turn Tucker v. State, 474 So.2d *330 131, 132 (Ala.Crim.App.1984), rev’d on other grounds, 474 So.2d 134 (1985)).
In this case, the officers’ testimony was not hearsay. The circuit court correctly limited the officers’ testimony and would not allow them to testify about anything Elliff told them that Chapman had done. Each officer explained that he and she were responding to reports of domestic disputes made by Elliff and testified as to what he and she observed upon arrival at the scene. Thus, the officers’ testimony was not hearsay.
B.
Chapman’s remaining arguments contend that the evidence did not meet any of the permissible purposes of Rule 404(b)[4] and that the probative value of the bad acts was substantially outweighed by the unfair prejudice.
“The admission or exclusion of evidence is a matter within the sound discretion of the trial court.” Taylor v. State, 808 So.2d 1148, 1191 (Ala.Crim.App.2000), aff’d, 808 So.2d 1215 (Ala.2001). “The question of admissibility of evidence is generally left to the discretion of the trial court, and the trial court’s determination on that question will not be reversed except upon a clear showing of abuse of discretion.” Ex parte Loggins, 771 So.2d 1093, 1103 (Ala.2000). This is equally true with regard to the admission of collateral-act evidence. See Davis v. State, 740 So.2d 1115, 1130 (Ala.Crim.App.1998); see also Irvin v. State, 940 So.2d 331, 344-46 (Ala.Crim.App.2005). In a discussion of collateral-act evidence, this Court stated: “If the defendant’s commission of another crime or misdeed is an element of guilt, or tends to prove his guilt otherwise than by showing of bad character, then proof of such other act is admissible.” Saffold v. State, 494 So.2d 164 (Ala.Crim.App.1986).
Rule 404(b) provides:
“Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.”
We have held:
“““In a prosecution for murder, evidence of former acts of hostility between the accused and the victim are admissible as tending to show malice, intent, and ill will on the part of the accused.’ White v. State, 587 So.2d 1218, 1230 (Ala.Cr.App.1990), affirmed, 587 So.2d 1236 (Ala.1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992).” Childers v. State, 607 So.2d 350, 352 (Ala.Cr.App.1992). “Acts of hostility, cruelty and abuse by the accused toward his homicide victim may be proved by the State for the purpose of showing motive and intent.... This is ‘another of the primary exceptions to the general rule excluding evidence of other crimes.’” Phelps v. State, 435 So.2d 158, 163 (Ala.Cr.App.1983). See also Baker v. State, 441 So.2d 1061, 1062 (Ala.Cr.App.1983).’ ”
*331 “ ‘Former acts of hostility or cruelty by the accused upon the victim are very commonly the basis for the prosecution’s proof that the accused had a motive to commit the. charged homicide.’ 1 Charles W. Gamble, McElroy’s Alabama Evidence § 45.01(8)(5th ed.1996)(footnote omitted), and cases, cited therein.”
Burgess v. State, 962 So.2d 272, 282 (Ala.Crim.App.2005). A trial judge should exclude evidence falling within one of the exceptions only if the probative value is substantially outweighed by the danger' of unfair prejudice. See Ex parte Register, 680 So.2d 225 (Ala.1994).
The State had to prove that Chapman intended to cause Elliffs death as part of its burden in proving murder. See § 13A-6-2, Ala.Code 1975. By presenting evidence indicating that Chapman had been involved in previous domestic altercations with Elliff, the State demonstrated Chapman’s intent to kill Elliff on the night in question. Because Chapman was being prosecuted for the murder of Elliff, her former acts of hostility toward Elliff were admissible to show her motive to commit murder. Furthermore, any prejudice resulting from evidence of those acts and threats was minimized by the circuit court’s limiting instructions to the jury regarding the consideration of the collateral acts. The jury is presumed to follow the circuit court’s instructions. Calhoun v. State, 932 So.2d 923, 965 (Ala.Crim.App.2005). Therefore, the danger of unfair prejudice did not substantially outweigh the probative value of the evidence. See Rule 403, Ala. R. Evid.
Moreover, even if we were to conclude that the circuit court erred when it admitted the deputies’ testimony, Chapman is entitled to no relief because the error was harmless. The harmless-error rule provides, in pertinent part:
“No judgment may be reversed or set aside ... on the ground of ... improper admission or rejection of evidence, ... unless in the opinion of the court to which the appeal is taken or application is made, after examination of the entire case, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”
Rule 45, Ala. R.App. P.
We have stated:
“In Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the United States Supreme Court held that before a federal constitutional error can be held to be harmless, the appellate court must be able to declare a belief that it was harmless beyond a reasonable doubt. In Ex parte Crymes, 630 So.2d 125 (Ala.1993), the Alabama Supreme Court explained:
“‘In determining whether the admission of improper testimony is reversible error, this Court has stated that thé reviewing court must determine whether the “improper admission óf the evidence ... might have adversely affected the defendant’s right to a fair trial,” and before the reviewing court can affirm a judgment based upon the “harmless error” rule; that .court must find conclusively that the trial court’s error did not affect the outcome of the trial or otherwise prejudice a. substantial right. of the defendant.’
“630 So.2d at 126. See also Ex parte Greathouse, 624 So.2d 208, 210 (Ala.1993)(holding that the proper harmless-error inquiry asks — absent the improperly introduced evidence, ‘is it clear beyond reasonable doubt that the jury would have returned a verdict of guilty?’).”
*332 Gracie v. State, 92 So.3d 806, 813 (Ala.Crim.App.2011).
Our review of the record establishes that it is clear beyond a reasonable doubt that the jury would have-returned a guilty verdict regardless of the admission of the testimony; Kilmeyer’s testimony established that Chapman was angry at Elliff and that she had threatened him with a knife on the night of his death. The State also presented evidence indicating that Elliff told officers that Chapman stabbed him while he was lying on the couch. Because the evidence against Chapman was so overwhelming, any error in the circuit court’s admitting prior-bad-act evidence did not affect the outcome of the trial or otherwise prejudice Chapman’s substantial rights. Therefore, Chapman is not entitled to relief on this claim.
II.
Chapman contends that the circuit court erred when it gave an incomplete jury instruction on. self-defense. Specifically, Chapman argues that the circuit court omitted a portion of the law that states that .a “person is presumed justified in using deadly physical force if she reasonably believes that another person is committing or about to commit assault in the first or second degree.” (Chapman’s brief, p. 47.)
The record indicates that after the circuit court charged the jury, it asked attorneys on both sides if they had any exceptions or objections to the charge; both sides answered in the negative.
.Alabama law has long held that - “[a]n issue raised for the first- time, on appeal is not-subject to-review because it has not been properly preserved and presented.” Pate v. State, 601 So.2d 210, 213 (Ala.Crim.App.1992). “[T]o preserve an issue for appellate review,, it must be presented to the trial court by a timely and specific motion setting out the specific grounds in support thereof.” McKinney v. State, 654 So.2d 95, 99 (Ala.Crim.App.1995) (citation omitted). “The -purpose of requiring a specific objection to preserve an issue for appellate review is to put the trial judge on notice of the alleged error, giving an opportunity to correct it before the case is submitted to the jury.” Ex parte Works, 640 So.2d 1056, 1058 (Aa.1994). This is particularly true when an appellant challenges a circuit, court’s jury instructions. Rule 21.3, Ala. R.Crim. P., provides, in pertinent part:
“No party may assign- as error the court’s giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, of otherwise improper oral charge; unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he" or she objécts and the grounds of the objection.”
In order to preserve for appellate review an issue regarding jury instructions, the defendant must object before the jury retires, to deliberate. See Davis v. State, 747 So.2d 921, 924 (Ala.Crim.App.1999); Hinton v. State, 632 So.2d 1345, 1350 (Ala.Crim.App.1993). Chapman did not specifically object to the circuit court’s jury instructions on the basis that the instructions were inadequate; therefore, this issue is not properly preserved for our review.
III.
Chapman further contends that the circuit court erred when it admitted into evidence. Elliffs statement that Chapman stabbed him. Specifically, Chapman argues that this statement did not meet any of the exceptions to the rule against hearsay and that it also violated Chapman’s right to confrontation.
*333 A.
“Hearsay is not admissible except as provided by these rules, or by other rules adopted by the Supreme Court of Alabama or by statute.” Rule 802, Ala. R. Evid. “Hearsay” is defined as “a statement, other than one made by .the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” Rule 801(c), Ala. R. Evid.
Rule 808, Ala. R. Evid. provides a list of exceptions to the exclusion of hearsay under Rule 802, Ala. R. Evid. As part of that list, Rule 803(2), Ala. R. Evid. defines “excited utterance” as “[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition,” and such a statement is “not'excluded by the hearsay rule,- even though the declarant is available as a witness.” In interpreting this rule, this Court has quoted Professor Charles Gamble, who has written:
“‘This rule sets out three conditions which must be met for admission of the statement. There must be a startling event or condition, the statement must relate to the circumstances of the occurrence and the statement must be made before time has elapsed sufficient for the declarant to fabricate. The statement must be the apparently spontaneous product of that occurrence operating upon the visual, auditory, or other perceptive sense of the speaker. The declaration must be instinctive rather than deliberative. In short, it must be the reflex product of the immediate sensual impressions, unaided by retrospective mental action. Whether a statement qualifies as an excited utterance is a preliminary and discretionary question for the trial court.’ ”
A.C.M. v. State, 855 So.2d 571, 575 (Ala.Crim.App.2002). (quoting Charles W. Gamble, McElroy’s Alabama Evidence 265.01(1)(5th ed.l996)(footnotes omitted)).
Further,
“The trial court, in determining whether the statement was made spontaneously or during -the stress of excitement, ought, to consider at least the following: the degree of startlingness of the occurrence; how much time passed after the occurrence but before the statement was made; the effect of intervening events; the nearness of the place where the statement was made to the place of the occurrence; the condition of the declarant; the content of the statement itself; and all other facts relating to whether the declarant was under the stress of a nervous excitement at the time the statement was made.”
C. Gamble and R. Goodwin, McElroy’s Alabama Evidence, 265.01(2) (6th ed.2009).
“ ‘[A] statement made in response to a question is admissible as a spontaneous-exclamation if the person answering was still under the influence of the excitement or shock of the crime.’ ” A.C.M., 855 So.2d at 577 (quoting O’Cain v. State, 586 So.2d 34, 38 (Ala.Crim.App.1991)). Thus, although the fact that Elliffs statements were made in response to questioning by Sgt. Free was a factor to be considered, it was not dispositive of the issue of the admissibility of those statements.
Chapman argues that Elliffs statements did not “exhibit any of the spontaneity required by the excited utterance exception.” (Chapman’s brief, p. 52.) We disagree. The evidence established that, when police arrived, Elliff was bleeding profusely on the porch from a stab wound he had suffered inside the residence. Elliffs statement related to the circumstances that caused .the injury. Further, Elliff made the statement before sufficient time to fabricate the story had *334 elapsed.' Thus,- the statement was- properly allowed into-evidence as an excited utterance.
 In addition to meeting the requirements of an excited utterance, the statement also meets the requirements of a dying declaration. Rule 804(b)(2), Ala. R. Evid., provides an exception for the. statement of an unavailable witness when the statement was made under the belief that death was imminent, defined as: “A statement made by a declarant while believing that the declarant’s death was imminent, concerning the causes or circumstances of what the declarant believed to be the declarant’s impending death and offered in a criminal case.”
“It is not indispensable that the de-clarant should have said that he believed that he must or would die soon, as such belief may in the circumstances be inferred from his condition and his conduct. In determining whether the declarant believed that death was imminent, the trial court may look to statements of the deceased, the nature of his wounds, his weakness, and all the circumstances tending to show the deceased’s state of mind at the time.”
O’Cain v. State, 586 So.2d 34, 37 (Ala.Crim.App.1991) (internal citations omitted).
“A dying declaration is a statement by a person who believes that death will certainly occur soon. The declarant must be gripped that despair of life which is naturally produced by an impression of almost dissolution, a dissolution so near as to cause all motives of falsehood to be superseded by the strongest inducements to strict accuracy. It has been said that the declarant, when making the statement, must have been in settled, hopeless expectation of impending death.
“It must be emphasized, however, that it is not indispensable that the declarant have expressed a belief that death was imminent. Such belief may, in the circumstances of the case, be inferred from the declarant’s statements, condition or conduct.. Additionally, the declarant’s sense of impending death may be proven through the conduct or statements of those around the declarant. Whether the circumstances give rise to an inference that the declarant sensed impending death is a preliminary determination for the trial judge. If the judge concludes that the facts are sufficient from which to infer the prerequisite state of mind, it is then for the jury to decide what weight to accord the admitted dying declaration.”
Gamble and Goodwin, McElroy’s Alabama Evidence, 248.01(1)(6th ed.2009).
“Whether the declarant believed that death was certain to occur soon is for the determination of the trial court, reversible on appeal only if the evidence did not support such a finding. The circumstances of each case will show whether the requisite consciousness existed; and it is poor policy to disturb the ruling of the trial judge upon the meaning of such circumstances.”
O’Cain v. State, 586 So.2d 34, 37 (Ala.Crim.App.1991)(internal citations and quotation marks omitted).
The record indicates that Elliff was lying on the porch, bleeding profusely, and very pale when the police arrived. His breathing was labored, and it hurt him to speak. He had received a fatal stab wound to his chest, and Sgt. Free asked him who had caused the injury. Therefore, the circuit court did not abuse its discretion when it admitted into evidence — either as an excited utterance or as a dying declaration — Elliffs statement *335 that Chapman had stabbed him when he was lying down- on the couch.
B.
Chapman also contends that the introduction of EllifPs statement into evidence violated her right to confront witnesses against her.
Although defense counsel- mentioned a Confrontation Clause issue, during his motion for a judgment of acquittal, this Court has explained:
“A motion to exclude or for a judgment of acquittal is not sufficient to preserve the issue if no timely objection was made when the evidence was offered. Newsome v. State, 570 So.2d 703 (Ala.Cr.App.1989). Objections to the admission of evidence must be made when the evidence is offered, along with specific grounds to allow the trial court to rule. Jelks v. State, 411 So.2d 844 (Ala.Cr.App.1981).”
Craig v. State, 616 So.2d 364, 366 (Ala.Crim.App.1992).
Because Chapman did not properly present her Confrontation Clause claim in the circuit court, the claim was not preserved for appellate review and will not be considered by this Court.
IV.
Chapman also contends that the evidence was insufficient to support her conviction.
“ ‘ “In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State; accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.’” Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff’d, 471 So.2d 493 (Ala.1985). ‘ “The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.” ’ Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). ‘“When there is legal evidence from which the jury could, by fair inference, find the .defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.”’ Farrior v. State, 728 So.2d 6.91, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).
“‘The trial court’s denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. *336 McConnell v. State, 429 So.2d 662 (Ala.Cr.App.1983).’”
Gavin v. State, 891 So.2d 907, 974 (Ala.Crim.App.2003), cert. denied, 891 So.2d 998 (Ala.2004) (quoting Ward v. State, 610 So.2d 1190, 1191 (Ala.Crim.App.1992)).
“‘“Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.” White v. State, 294 Ala. 265, 272, 314 So.2d 857 (Ala.1975), cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). “Circumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.” Cochran v. State, 500 So.2d 1161, 1177 (Ala.Crim.App.1984), affirmed in pertinent part, reversed in part on other grounds, Ex parte Cochran, 500 So.2d 1179 (Ala.1985).’
Hollaway v. State, 979 So.2d 839, 843 (Ala.Crim.App.2007) (quoting White v. State, 546 So.2d 1014, 1017 (Ala.Crim.App.1989)).
“ ‘In reviewing a conviction, based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether' a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir.1974); United States v. McGlamory, 441 F.2d 130 (5th Cir.1971); Clark v. United States, 293 F.2d 445 (5th Cir.1961).’”
Bradford v. State, 948 So.2d 574, 578-79 (Ala.Crim.App.2006) (quoting Cumbo v. State, 368 So.2d 871, 874-75 (Ala.Crim.App.1978)).
A person commits murder if “[w]ith intent to cause .the death of another person, he causes the death of that person.” § 13A-6-2(a)(l), Ala.Code 1975.
“Whether a defendant intentionally caused the. death of.another person is a .question of fact for the jury. Carr v. State, 551 So.2d 1169. (Ala.Crim.App.1989). Intent may be presumed from the use of a deadly weapon or from other circumstances. Barnes v. State, 571 So.2d 372 (Ala.Crim.App.1990). Intent is usually proven by circumstantial evidence. Smith v. State, 795 So.2d 788 (Ala.Crim.App.2000).”
Blount v. State, 876 So.2d 509, 512 (Ala.Crim.App.2003).
In the instant case, the evidence, when viewed in a light most favorable to the State, indicates that Chapman was angry with Elliff because he had sold her car and refused to give her any of the money from the sale. On the night before Elliffis death, Chapman and Elliff got into an argument. During the argument, Chapman pointed a knife at Elliff and stabbed it into the counter. Later that evening, Elliff came home and Chapman stabbed Elliff while he was lying on the couch. Chapman then tried to conceal her involvement by washing the knife and lying to the police. Elliff died as a result of the stab wound. Thus, a jury could reasonably conclude that Chapman. intended to kill Elliff. Accordingly, this issue provides no basis for reversal.
V.
Finally, Chapman challenges the weight of the evidence, arguing that the weight of the evidence presented at trial was against the jury’s verdict.
In Thompson v. State, 97 So.3d 800, 810 (Ala.Crim.App.2011), this Court explained:
“‘“The weight of the evidence is clearly a different, matter from the *337 sufficiency of the evidence. The sufficiency of the evidence concerns the question of whether, ‘viewing the evidence in the light most favorable to the prosecution, [a] rational fact finder could have found the defendant guilty beyond a reasonable doubt.’
‘““In contrast, ‘the “weight of the evidence” refers to a “determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.” ’ We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial. ‘ “The credibility of witnesses and the weight or probative force of testimony is for the jury to judge, and determine.” ’ ” ’
“Seaton v. State, 645 So.2d 341, 342-43 (Ala.Crim.App.1994), quoting Johnson v. State, 555 So.2d 818, 819-20 (Ala.Crim.App.1989) (citations omitted).
“ ‘Once a prima facie case has been submitted to the jury, this Court will not upset the jury’s verdict except in extreme situations in which it is clear from the record that the evidence against the accused was so lacking as to make the verdict wrong and unjust. Deutcsh v. State, 610 So.2d 1212, 1234-35 (Ala.Crim.App.1992). This Court will not substitute itself for the jury in determining the weight and probative force of the evidence. Benton v. State, 536 So.2d 162, 165 (Ala.Crim.App.1988).’
“May v. State, 710 So.2d 1362, 1372 (Ala.Crim.App.1997).
“ ‘Furthermore, on appeal, there is a presumption in favor of the correctness- of the jury verdict. Saffold v. State, 494 So.2d 164 (Ala.Crim.App.1986). Although that presumption of correctness is strong, it may be overcome in a limited category of cases where the verdict is found to be palpably, wrong or contrary to the great weight- of the evidence. Bell v. State, 461 So.2d 855, 865. (Ala.Crim.App.1964).’
“Henderson v. State, 584 So.2d 841, 851 (Ala.Crim.App.1988).”
Thompson, 97 So.3d at 810.
As discussed in Part IV, supra, the State presented sufficient evidence from which the jury could conclude that Chapman was guilty of Elliffs murder. Specifically, the State presented evidence indicating that Chapman stabbed Elliff while he was lying on the couch. Chapman then tried to conceal her involvement by washing the knife and lying to the police. Although Chapman testified that Elliff attackéd her and that she stabbed him in self-defénse, the credibility of the witnesses" áfid the weight and probative force of their testimony were for the jury to determine. Because'the jury’s verdict was not against the great weight of the evidence, Chapman is not ¿ntitled to a new trial baséd on this argument.
Based oh, the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and BURKE and JOINER, JJ., concur.
WELCH; J., dissents, with opinion.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694(1966).

. The autopsy performed by Dr. Ward indicated that Elliff had used both alcohol and cocaine shortly before his death.

. The evidence regarding Chapman’s threat to the previous boyfriend and her assault on her ■ ex-husband was not introduced at trial.

. Chapman argues that the evidence was not admissible to show intent, that the evidence was not admissible to show motive, and that the evidence was introduced for the improper purpose of showing Chapman’s bad character. Because all three of these issues involve the permissible purposes of Rule 404(b), we have combined these issues for purposes of appeal.